## John W. Byers et al. v. Johnson County Savings Bank, etc.

1. CONSIGNMENT—*Of Goods by Mistake—Rights of Consignee.*— The fact that goods are consigned, by mistake of a shipping clerk, in the name of a person other than the lawful owner, gives the consignee no right to apply the proceeds of the sale upon the pre-existing indebtedness of the person in whose name the goods were so consigned to such consignee.

2. SAME—*Consignee—When Protected Against Mistakes, etc.*—Where goods are, through an error, consigned in the name of a person other than the owner, and the consignee, in ignorance of such fact, is induced by such appearance of ownership to part with something of value, or to change his position in some manner detrimental to himself, he will be protected.

**Assumpsit**, for money had and received. Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed April 27, 1896.

D. P. PHELPS, attorney for appellants.

ROSENTHAL, KURZ & HIRSCHL, attorneys for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The material facts of this case are not controverted. They are in substance that one Elliott, of Iowa City, Iowa, was a buyer and shipper of live hogs, and in the course of his business became indebted to the appellants, who were live stock commission merchants at the Union Stock Yards in Chicago, and also to the appellee bank in Iowa city.

The previous course of dealing seems to have been for Elliott to buy hogs from farmers and give his checks therefor drawn on the appellee bank, where he kept a running account, and to ship the hogs so purchased in his own name to the appellants for sale, and it was in that manner of dealing that his indebtedness to both appellants and appellee was created.

A time arrived, however, when the appellee declined to honor Elliott's checks for any more funds. Thereupon it was agreed between Elliott and appellee that Elliott should buy hogs for and ship them in the name of the appellee. The method so agreed upon and pursued, of buying and shipping hogs thereafterward, was for Elliott to buy the hogs and give to the farmer from whom he made a purchase, a ticket showing the number and weight of the animals, and the price per pound, which ticket the farmer would take to the appellee bank where the amount would be figured and paid to the person named on the ticket as the seller, and then the hogs would be shipped by rail to the appellants in the name of the appellee, and appellants would account and remit the net proceeds to the appellee.

By such method Elliott handled none of the money paid for the hogs or received from their sale. The appellee, however, kept the account of the transactions in Elliott's name, charging him with all sums paid for hogs, with interest, and crediting him with all proceeds. If a profit resulted, it was not given to Elliott, but was applied in reduction of his old indebtedness to appellee, and if there

was a loss, which however, does not appear to have occurred, it would have increased such indebtedness.

Of this arrangement between appellee and Elliott, the appellants were informed by Elliott, and told that it would have to be pursued for a while; and it appears that appellee would not furnish money, whereby Elliott might continue in business, upon any other basis.

The arrangement so entered upon was pursued without deviation or trouble of any kind for several months, and included twenty or thirty distinct shipments of hogs.

Finally, and about the middle of August, 1894, the shipment in question was made. The hogs composing that shipment were purchased in the same way in the name of appellee, and were paid for by the appellee, and the station agent of the railway company was ordered to ship the hogs as the property of appellee to the appellants. Acting in pursuance of such directions, the station agent executed the usual receipt and live stock shipper's contract, signed by himself as agent, and in the name of the appellee as owner, wherein it was recited that the hogs in question were received of the appellee consigned to the appellants. Such receipt and contract was then delivered to Elliott's son, who accompanied the shipment to Chicago, as in charge of the same, but it does not appear what he did with it. Then to the conductor of the railway train that carried the hogs out of Iowa City, a way-bill of the hogs was delivered by the station agent, or his clerk, wherein the hogs were described as being consigned by Elliott, instead of by appellee, to the appellants. The station agent testified that he was directed to bill the hogs from appellee to the appellants, and that the circumstance of naming Elliott in the way-bill as consignor, was because of a mistake of the bill clerk, made in violation or neglect of his directions to the clerk to bill the shipment from appellee.

It does not appear that the appellants had any knowledge of the receipt and shipping contract which was delivered to Elliott's son, until long afterward. When the hogs reached Chicago they were delivered to appellants in pur-

suance of the way-bill, and were sold by appellants and the net proceeds amounting to $729.78 credited against the past indebtedness owing to them by Elliott, who was duly notified thereof.

This was done on August 15, 1894. Elliott at once informed appellee, and on the next day, August 16, 1894, appellee wrote to appellants, claiming the money as the proceeds of hogs shipped in its name, and belonging to it; to which letter appellants replied on August 17th, stating the fact that the hogs were not billed in appellee's name, and denying any appropriation of its funds.

The station agent paid the appellee the amount of $729.78, and took an assignment of its claim, and this suit in appellee's name, for his use, was brought against appellants, and judgment for said sum of $729.78 was recovered.

From such judgment this appeal has followed.

The appellants' chief contentions are, first, that the hogs belonged to Elliott, and not to appellee; and, second, that they being consigned by the proper owner to the appellants, the latter, being factors, had a lien upon the hogs for prior advances in past transactions, which lien could not be divested in favor of any equitable lien of the appellee, who had not taken and kept a continuous and visible possession.

The second contention has nothing left to rest upon if the first one fails. Under the proved facts, it can not be a matter of uncertainty that it was the intention of appellee and Elliott that the property in the hogs should belong to and remain in the appellee, from the time of their purchase to the time of their sale; and it was no less their intention that at least constructive possession of the hogs should remain in the appellee during all that time. We do not think that the mere circumstances of the manner of keeping the accounts and applying the proceeds should be permitted to control the main fact, that the hogs were, by their purchase, to become the property of the appellee, which was by all the other evidence clearly established.

It did not matter how the accounts were kept, if from the real circumstances a condition existed that stamped the

transaction as one different from that which the accounts, as kept, might possibly be said to indicate. The real fact in such a case, when, as in this case, clearly proved, will control and prevail over the other theory, which the manner of keeping the accounts might tend to sustain.

Unless there was an intention, which it is clear there was not, to extend a credit to Elliott, the form in which the evidence of the transactions was kept, is of no consequence.

Under the method pursued, as well as by the real intention of the parties, there was never a moment of time in which Elliott had a right of property in the hogs; and if it be claimed that he ever for a moment had possession of them, there is no foundation for such a claim.

Nor did he ever even appear to have either property in, or possession of them, until, by the mistake of the bill clerk, his name, as consignor of them, was written upon the waybill.

Undoubtedly if the hogs had been in fact Elliott's property, the appellants would have been justified in applying the proceeds of sale upon his pre-existing indebtedness to them. The law in such a case would have followed the fact of ownership, just as it will follow the fact of another ownership to a different conclusion.

But the only reasonable conclusion from the evidence, which can be arrived at under the law, is that the hogs were the property of the appellee from the moment of their purchase to that of their sale. And that being so, the law will forbid appellants, into whose possession the hogs came, although they bore the outward semblance of being Elliott's property, from appropriating them upon a pre-existing indebtedness of Elliott to them.

It can not alter either the fact or the law, that by mistake the property appeared to be that of Elliott, and not of the appellee, unless the appellants were induced by such appearances of ownership in Elliott to part with something of value, or to change their position in some manner detrimental to themselves. Under the circumstance that the waybill came to appellant's hands showing that Elliott was the consignor, the appellants, in the absence of other evidence

of ownership, might have been protected had they paid the proceeds to Elliott or to anybody else by his authority, but they could not, as against the true owner, apply the proceeds to liquidation of a pre-existing debt owing to them by Elliott.

The appellants parted with nothing on their faith and belief that the property belonged to Elliott, excepting the freight and charges paid by them and their own services, and for all which they were reimbursed, as they properly were entitled to be, by deducting the same from the gross receipts for which they sold the hogs.

By the judgment the appellants are required simply to pay the net proceeds of the transaction which remain in their hands, to the true owner of the property sold by them.

We do not follow the argument of counsel for appellants into the domain of conflicting liens as between the appellants and the appellee, for that question is eliminated from the case by the conclusion reached by us, that the hogs were the property of appellee, and that appellants have suffered no harm.

The evidence that was received, showing the transaction between the Bank and Elliott, was proper for the purpose of showing the very fact in issue of who the hogs belonged to.

There was no material error either in the giving of appellee's instruction, or in the refusal of appellants '.

The verdict was in accordance with substantial justice and the judgment ought to be affirmed, and it is so ordered.